```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA


  UNITED STATES OF AMERICA      :
                                :
           Plaintiff,           :  Criminal Action
                                :  No. 17-0197
  v.                            :
                                :
  HOLLIE ANN NADEL,             :  December 21, 2017
                                :  3:43 p.m.
                                :
                                :
           Defendant.           :  Washington, D.C.
                                :
  ............................. :
```

**TRANSCRIPT OF BOND HEARING PROCEEDINGS
BEFORE THE HONORABLE EMMET G. SULLIVAN,
UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For the United States:    **David B. Kent, Assistant U.S. Attorney**
                          U.S. ATTORNEY'S OFFICE FOR THE
                          DISTRICT OF COLUMBIA
                          555 Fourth Street, NW
                          Washington, DC 20530
                          (202) 252-7962
                          Email: David.kent@usdoj.gov

                          **Kondi Jon Kleinman, Assistant U.S. Attorney**
                          U.S. ATTORNEY'S OFFICE FOR THE
                          DISTRICT OF COLUMBIA
                          555 Fourth Street, NW
                          Washington, DC 20530
                          (202) 252-6887
                          Email: Kondi.kleinman2@usdoj.gov

                          **James M. Trusty, Esq.**
                          IRFAH LAW
                          1717 Pennsylvania Avenue, N.W.
                          Suite 650
                          Washington, DC 20006
                          (202)524-4140
                          Email: Jtrusty@irfahlaw.com

```
APPEARANCES:    Cont.


For the Defendant:          Whitney A. Fore, Esq.
                            IFRAH LAW
                            1717 Pennsylvania Avenue, N.W.
                            Suite 650
                            Washington, DC 20006
                            (202) 524-4160
                            Email: Wfore@ifrahlaw.com

                            Alain J. Ifrah, Esq.
                            IFRAH, PLLC
                            1717 Pennsylvania Avenue, NW
                            Suite 650
                            Washington, DC 20006
                            (202) 524-4142
                            Fax: (202) 524-4141
                            Email: Jeff@ifrahlaw.com

                            Jesse R. Binnall, Esq.
                            HARVEY & BINNALL, PLLC
                            717 King Street
                            Suite 300
                            Alexandria, VA 22314
                            (703) 888-1943
                            Email: Jbinnall@harveybinnall.com



 Court Reporter:            Scott L. Wallace, RDR, CRR
                            Official Court Reporter
                            Room 6503, U.S. Courthouse
                            Washington, D.C. 20001
                            202.354.3196
                            scottlyn01@aol.com

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
```

|    |                                                                                    |
|----|------------------------------------------------------------------------------------|
| 1  | **AFTERNOON SESSION, DECEMBER 20, 2017** |
| 2  | (3:43 p.m.) |
| 3  | THE COURTROOM CLERK:  Your Honor, this is criminal case |
| 4  | 17-197, the *United States of America versus Hollie Anne Nadel*. |
| 5  | Will all parties please come forward to this lectern and |
| 6  | identify yourselves for the record. |
| 7  | MR. KENT:  David Kent on behalf of the United States. |
| 8  | Good afternoon. |
| 9  | THE COURT:  Mr. Kent, good afternoon. |
| 10 | MR. TRUSTY:  Good afternoon, Your Honor.  Jim Trusty on |
| 11 | behalf of Hollie Nadel. |
| 12 | THE COURT:  All right, Counsel, good afternoon. |
| 13 | MS. FORE:  And, Your Honor, Whitney Fore on behalf of the |
| 14 | defendant. |
| 15 | THE COURT:  All right, Counsel, good afternoon. |
| 16 | Ms. Nadel, how are you? |
| 17 | THE DEFENDANT:  Good.  Thank you, Judge. |
| 18 | THE COURT:  All right.  Over objection, I'm going to |
| 19 | release Ms. Nadel.  The conditions will be stringent.  I have one |
| 20 | question to ask government counsel.  What about the history of |
| 21 | drug usage?  Is there a history? |
| 22 | MR. KENT:  Not to my -- not to the government's knowledge, |
| 23 | certainly not to our knowledge, based on the investigation. |
| 24 | THE COURT:  All right.  I'm going to -- let me just talk |
| 25 | very generally about the conditions.  There will be third-party |

1  custody to Mr. and Mrs. Nadel, and it will be 24-hour
2  confinement.  I'm going to order random drug testing at the
3  discretion of the Pretrial Services in the Eastern District of
4  New York.  There will be GPS monitoring.  The Court understands
5  that when Ms. Nadel is released today, that there will be a
6  period where she won't be supervised because she won't have the
7  bracelet on until she reports to Pretrial Services in New York,
8  but she shall report and have the ankle monitor attached by no
9  later than 9 a.m. tomorrow morning.  Is the government asking for
10 a stay-away?  And if so, from who?
11         MR. KENT:  From all co-conspirators in this case.
12         THE COURT:  Would she necessarily know?
13         MR. KENT:  I think she would know.
14         THE COURT:  Right, because I'm not suggesting -- the
15 Court's not suggesting at all that the only legitimate inference
16 is that Ms. Nadel is a victim.  I don't know enough about this
17 case.  To her credit, my recollection is that she did help with
18 the apprehension of at least one co-defendant.
19         MR. KENT:  That's correct, Your Honor.
20         THE COURT:  And I've taken that into consideration, which
21 goes to her, I guess, trustworthiness, reliability, and I'll give
22 her the benefit of the doubt, her ability to comply with
23 reasonable restrictions on her activities in the community, so --
24         MR. KENT:  And the government doesn't believe that she
25 would have any -- she, individually, would have any legitimate

1  reason to contact any of the other individuals with whom she was
2  associated with during the course of conduct that's alleged in
3  the indictment.
4           Certainly, her counsel can do that consistent with his
5  representation of her, but certainly there's no reason that the
6  government could think of why Ms. Nadel would need to contact any
7  of these other individuals.
8           THE COURT:  All right.  What about contact from them?  Do
9  you want a condition imposed that she has to report
10 communications from co-conspirators or not?
11          MR. KENT:  I don't know that -- I don't know the Court
12 necessarily needs to set that as a condition.  That's not a
13 concern of ours for a host of reasons.
14          THE COURT:  What other concerns does the government have?
15          MR. KENT:  I mean, 24-hour home confinement would
16 certainly be preferable with the exception for, in our view,
17 visits to counsel -- visits with counsel, travel to D.C. for
18 purposes of meetings with counsel or court or other activities
19 related certainly to her defense, medical reasons or certainly to
20 attend religious services, with the exception of -- and
21 counseling certainly, as needed, with the exception -- Outside of
22 those exceptions, the government does not believe that there
23 should be certainly any period in which she's not within the
24 confines of that residence.
25          THE COURT:  I agree.  I agree with that.  Any other

1  conditions that the government is asking for?
2          MR. KENT:  No, Your Honor.
3          THE COURT:  All right.  And just looking down the road, do
4  you want a status hearing scheduled?  And if so, what timeframe?
5          MR. KENT:  Yes.  Mr. Trusty and I have spoken about
6  timeframe.  Our preference would be some time late January, early
7  February.  My understanding is that counsel has agreed and
8  Ms. Nadel will agree to exclude speedy trial between today and
9  whenever the next status hearing date time is.
10         THE COURT:  Friday, February 2nd at noon.  Is that a good
11 date and time?
12         MR. KENT:  That's fine, Your Honor.
13         THE COURT:  Counsel?
14         MR. TRUSTY:  That will be fine, Your Honor.
15         THE COURT:  All right.
16         MR. TRUSTY:  Could I just add a couple of comments?
17         THE COURT:  Sure.
18         MR. TRUSTY:  First, in terms of the drug question the
19 Court had, there is no drug history, but that doesn't mean she
20 has any problem with random drug testing.  That's fine.  But
21 there's no need for counseling.  The exceptions that we heard
22 make sense to us in terms of establishing a track record and also
23 dealing with some of the issues that she has to deal with and
24 making herself available.
25         On the contact with the co-conspirators, the only thing I

1  would suggest is -- First of all, I can tell you her parents
2  actually welcome the no contact.  They are highly alarmed by even
3  the concept of contact.  There could be circumstances where
4  there's an intentional contact made, but only with government
5  supervision.  So --
6          THE COURT:  That's fine.
7          MR. TRUSTY:  If that were to happen, we'll hash that out.
8  But other than that, there's no question that this family will
9  report anything that happens that --
10         THE COURT:  What the parties want to do consensually is
11 fine with me.
12         MR. TRUSTY:  As I said, I agree that there's no need for
13 an actual condition of reporting because I'll get that call
14 within ten seconds of any sort of contact taking place.
15         I had one logistical question for the Court to see if Your
16 Honor might be willing to help.  The Nadels are here.  They are
17 prepared to drive her back home.  She's got a 9 a.m. meeting in
18 the Bronx or in Brooklyn for Pretrial Services up there, so
19 things are pretty well-established because we did the early
20 assessment of the house.  With about a six-hour drive, my only
21 question is if there is any way that this Court could, you know,
22 order or wink or nod or bribe or whatever the marshals to let her
23 be released from here.
24         THE COURT:  Certainly not the last word.
25         MR. TRUSTY:  No, no, no, that's a bad choice of word in

1   D.C. these days, but the bottom line is, if she goes back to
2   CTF -- She has no property at CTF, but if she goes back there, we
3   can almost guaranty they'll lose about two or three hours before
4   they head up to New York.  And I know it's not the usual course,
5   and I talked to the marshals about that.
6          THE COURT:  You know, we've done that before.  Does she
7   have personal property at CTF?
8          MR. TRUSTY:  Nope.  I'm sure there's a paper trail they
9   worry about, but that's the real hook I usually run into on
10  either side of this when I was a prosecutor.  They would say,
11  Well, --
12         THE COURT:  I don't have any problems, but, I mean --
13         MR. TRUSTY:  I don't know how comfortable you are leaning
14  on our marshal friends or CTF or whoever it would require, but
15  I'm just saying --
16         THE COURT:  I don't have any problem -- am I going to
17  create problems for the Marshal Service if I order that she be
18  released from downstairs?
19         THE DEPUTY U.S. MARSHAL:  That's something that we would
20  have to look into.  It's normally not a process --
21         THE COURT:  Did her parents bring clothes down?
22         MR. TRUSTY:  Yeah, yeah. But they're going to -- I'm --
23  They have about a five- or six-hour drive, and I feel like if
24  they started at 3:30 --
25         THE COURT:  I sympathize with you.

*1*       MR. TRUSTY:  I know I'm asking for a lot, so --

*2*       THE COURT:  No, I don't have any problems with it subject
*3* to -- I'll order it -- it may create -- who can we check with
*4* downstairs, with the Marshal?

*5*       THE DEPUTY U.S. MARSHAL:  We would actually call the cell
*6* block.

*7*       THE COURT:  Can we do that?  Why don't you do that.  Why
*8* don't you call and just say I'd like to do it.  She has no
*9* intention to go back to CTF.  You have nothing there that she
*10* wants?

*11*       MR. TRUSTY:  No, she was optimistic enough to take care of
*12* the few little things she had.  Her clothes her family took way
*13* back when she got arrested, so there's really nothing.

*14*       (Discussion had off the record.)

*15*       THE DEPUTY U.S. MARSHAL:  They just need to verify it and
*16* there may be a possibility, as long as you maybe do an order.

*17*       THE COURT:  Oh, yeah.  I'll order it.  She doesn't want to
*18* go back and her parents have clothes here.

*19*       THE DEPUTY U.S. MARSHAL:  He's going to let me know.  He's
*20* going to do his checks and balances.

*21*       THE COURT:  Sure.  That's fine with me.  And let me
*22* just -- Mr. and Mrs. Nadel, do you realize what you're subjecting
*23* yourself to by being third party custodians?  Wait a minute.
*24* Because the Marshal is on the phone.  I just want to be up front
*25* with you.  You understand what you're doing by consenting to be

*1*   third party custodians?

*2*         MR. NADEL:  We do, Your Honor.

*3*         THE COURT:  You're willing to do that?

*4*         MR. NADEL:  Yes, Your Honor.

*5*         THE COURT:  You want us to do that?

*6*         MR. NADEL:  Yes, Your Honor.

*7*         THE COURT:  All right.  I understand -- I'm not sure how

*8* the holidays are going to be, but I understand there was some

*9* grief between Ms. Nadel and her sister, they don't communicate

*10* with one another, but her sister doesn't reside in the home?

*11*         MR. NADEL:  No, Your Honor.

*12*         THE DEPUTY U.S. MARSHAL:  They said it was okay.

*13*         THE COURT:  They can go.  Thank you very much for

*14* calling.  We can do it.  All right.  Do you folks have any

*15* questions?  Are you sure you want to do this?  I understand

*16* you've not really had a lot of contact with your daughter the

*17* last couple of years?

*18*         MR. NADEL:  We're comfortable with it, Your Honor.

*19*         THE COURT:  Are you?  All right.  That's fine.

*20*         MR. TRUSTY:  Your Honor, one last point on that.  I know

*21* last time we were in court Your Honor had kind of broader

*22* questions, but as applied to here in terms of making sure

*23* third-party custodians knew that there was a risk --

*24*         THE COURT:  -- right --

*25*         MR. TRUSTY:  -- we researched it, spent some time talking

*1*   about it.  You got a report from pretrial in New York where they
*2*   covered this, but we actually went through it again today just to
*3*   talk about things like criminal contempt, escape, you know --
*4*         THE COURT:  Obstruction.
*5*         MR. TRUSTY:  It's draconian scenarios in terms of -- I
*6*   don't have any reason to think there's anything remotely close to
*7*   that that's going to happen, but I wanted to make sure that the
*8*   Court knew that we covered that and that these are folks that are
*9*   clear-eyed and supportive, but they're not going to be slouches
*10*  in terms of their daughter's behavior.
*11*        THE COURT:  All right.  I just wonder, folks, what we're
*12*  subjecting you to or what you're subject yourselves to because
*13*  there are other co-conspirators out there somewhere who may want
*14*  to contact -- I think you made reference to the fact that
*15*  communications by others with you had been a nuisance in the past
*16*  or something like that.  Is that correct?
*17*        MR. NADEL:  There was a time when they reached out to me a
*18*  while ago because of what I perceived was infighting among these
*19*  co-conspirators, and they got a sense that I had nothing to talk
*20*  with them about nor would I entertain anything that they had to
*21*  say, so they stopped calling.
*22*        THE COURT:  Okay.
*23*        MR. NADEL:  In addition, we have caller I.D. in the house
*24*  and there will be no calls that Hollie will answer.  That will be
*25*  one of the conditions.

*1*       THE COURT:  Right.

*2*       MR. NADEL:  And we do not want to hear from them under any
*3* circumstances.

*4*       THE COURT:  Right.

*5*       MR. NADEL:  And I believe she has no intention of ever
*6* hopefully being around these people again.

*7*       THE COURT:  All right.  But is it fair to say that they
*8* know where you live?

*9*       MR. NADEL:  Yes, they do.

*10*      THE COURT:  That's a problem.

*11*      MR. NADEL:  They know where I live and where I work.

*12*      MR. TRUSTY:  Which is why in part the family's house
*13* became a bit of a fortress in terms of security precautions, and
*14* that's one of the reasons why I think it would be helpful just to
*15* keep this -- I don't want to give them too much sophistication in
*16* terms of tracking court cases, but it may help to keep this as a
*17* sealed matter.

*18*      THE COURT:  I was just thinking that.  I don't have to
*19* place the pretrial release order on the public docket because it
*20* does disclose the address that she's directed to live at.  I
*21* don't want to do that.  I don't want to subject these folks to
*22* any unwanted or any unwarranted scrutiny, but we'll place that
*23* under seal.

*24*      MR. TRUSTY:  There hasn't been contact for a long time
*25* now, so we're optimistic that just kind of the specter of federal

*1* prosecution is enough to keep people from doing more.  But, you
*2* know, there are no guarantees, and the family understands that.
*3*          THE COURT:  You're a true believer, Counsel.  Well, you
*4* were a former federal prosecutor.
*5*          MR. TRUSTY:  I'm trying to shake that loose.
*6*          THE COURT:  All right.  I think there's a form she has to
*7* sign -- they have to sign, the Nadels, I think a pretrial order
*8* form.  Do you folks have any questions you want to ask me?
*9*          MR. NADEL:  No, Your Honor.
*10*          THE COURT:  All right.  Well, good luck.
*11*          MR. NADEL:  Thank you.  Thank you, Your Honor.
*12*          THE COURT:  Happy holidays, under the circumstances.
*13*          MR. NADEL:  Thank you.
*14*          THE COURT:  Ms. Nadel, let me just say, I take this matter
*15* very seriously.  These are very serious allegations.  I don't
*16* know what the strength of the government's case is against you.
*17* There may be at some point some inferences to be drawn that you
*18* were a victim, or not, I don't know, but I am, you know, inclined
*19* to give you an opportunity to reside with your parents under
*20* strict conditions.  It's 24 hours home detention with the
*21* exception of visits with your attorney, medical visits, any
*22* religious visits, any visits to D.C. for purposes of hearings.
*23* Do you have any questions about that?
*24*          THE DEFENDANT:  No, Your Honor.  I thank you, Judge.  I
*25* really appreciate this.  I will comply with everything.  There

*1* won't be any problems.

*2* THE COURT: Okay. Are you -- again, not trying to invade

*3* your privacy. Are you taking any medications now?

*4* THE DEFENDANT: No.

*5* THE COURT: Should you be, should you be taking

*6* medications?

*7* THE DEFENDANT: No.

*8* THE COURT: Okay. All right. Okay. Because there's no

*9* prohibition about your visiting your doctor to -- you know, for

*10* examinations or to get medications that your doctor prescribes.

*11* THE DEFENDANT: The only thing is like allergy medication,

*12* normal stuff.

*13* THE COURT: Okay. All right. So we'll see you in

*14* February, all right. Okay. All right, folks, thank you. I'm

*15* not sure where -- the Marshal can tell counsel where you folks

*16* can go. You brought clothes. So, I guess -- just one second.

*17* (Discussion had off the record.)

*18* THE COURT: Mr. Kent, should there be a need to have that

*19* modified in any way because of any consent among the parties, you

*20* can telephone chambers if you want to.

*21* MR. KENT: Thank you, Your Honor.

*22* THE COURT: All right. Sure. And it might be helpful

*23* with counsel on the phone or either speak to counsel.

*24* (Brief pause in proceedings.)

*25* THE COURT: Mr. Sidbury, thank you very much for all your

*1* help today.

*2*     MR. SIDBURY:  Your Honor, I'm going to put the address on

*3* the probation form.

*4*     THE COURT:  Sure, that's fine.  Thank you.  Happy

*5* holidays, everyone.  Thank you.

*6*     (Proceedings adjourned at 4:02 p.m.)

*7*

*8*
**C E R T I F I C A T E**
*9*

*10*     I, Scott L. Wallace, RDR-CRR, certify that
the foregoing is a correct transcript from the record of
*11* proceedings in the above-entitled matter.

*12*
     /s/ Scott L. Wallace                  1/17/18
*13*     ------------------------------     ----------------
       **Scott L. Wallace, RDR, CRR            Date**
*14*     **Official Court Reporter**

*15*

*16*

*17*

*18*

*19*

*20*

*21*

*22*

*23*

*24*

*25*